# Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAHEEM AKBAR, ARTHUR WARD, and GWENDOLYN WARD,

Plaintiffs,

-vs-

No. 08-11268
Hon. Lawrence P. Zatkoff
Mag. Steven R. Whalen

CITY OF DETROIT, CITY OF DETROIT OFFICER FISCHER, CITY OF DETROIT SERGEANT CARSON, CITY OF DETROIT DETECTIVE FISCHER and JOHN DOE(S),

Defendants.
_______________________________/

The deposition of RAHEEM AKBAR, taken before Reporter LaVerne M. Reinhardt, CSR-2305, Notary Public in and for the County of Wayne, State of Michigan, at 18100 Meyers Road, Detroit, Michigan, on Monday, October 27, 2008, commencing at or about the hour of 4:00 p.m.

APPEARANCES:

SHERYL EMERSON (P42529)
18100 Meyers Road
Suite 392
Detroit, Michigan 48235
(313) 341-4100

Appearing on behalf of the Plaintiffs





APPEARANCES: (Continued)

YUVONNE R. BRADLEY (P54885)
City of Detroit Law Department
1650 First National Building
Detroit, Michigan 48226
(313) 237-5051 ^

Appearing on behalf of the Defendants





I N D E X


| | PAGE: |
|---|---|
| Cross Examination by Ms. Bradley | 5 |
| Cross Examination by Ms. Emerson | 99 |
| Recross Examination by Ms. Bradley | 107 |
| Recross Examination by Ms. Emerson | 117 |
| Recross Examination by Ms. Bradley | 120 |
| Recross Examination by Ms. Emerson | 121 |
| Recross Examination by Ms. Bradley | 122 |


E X H I B I T S

None.





Detroit, Michigan
Monday, October 27, 2008
4:00 p.m.
--- --- ---

MS. BRADLEY: Let the record reflect that this is the date and time scheduled for the discovery deposition of Raheem Akbar, in the matter of Akbar et al versus City of Detroit et al, taken pursuant to Notice, and will be used for all purposes under the Michigan and Federal Court Rules, Michigan Rules of Evidence.

Good afternoon, Mr. Akbar.

THE WITNESS: Good afternoon.

MS. BRADLEY: We meet again. As you're aware, I'm the attorney for the City. I'm here today to ask you some questions which may or may not be relevant to the lawsuit that you filed.

Let me tell you the ground rules. There's a court reporter here. She's taking down everything you and I say so it's very important that you speak loudly and clearly, that you answer verbally yes or no or whatever the answer is and so that means you can't nod your head or shrug your shoulders, say uh-huh or uh-uh, okay?

THE WITNESS: Yes.

Q. Okay. So at some point Detective Fischer and some other detective came to the holding cell?
A. No, they didn't come to the holding cell. They got me out the holding cell and took me into a room, like an interrogation room. But it wasn't no interrogation room. It was like -- I think it was like visitors because it had the glass and the little speakers that you could talk through.
Q. Okay. So the first contact after putting you in the cell Detective Fischer took you out of the cell or some other officer?
A. Detective Fischer came back there and took me back there.
Q. And he took you to this room with the glass?
A. Yes.
Q. With the speakers in the window?
A. Yes.
Q. And what happened in that room?
A. They took a statement and asked me questions.
Q. But you believe it was a visiting room?
A. Yes. They used it as a interrogation room but it was really a visiting room.
Q. Okay. They took a statement from you. Who took a statement from you?
A. I don't know the other detective's name.





Q. It wasn't Fischer?
A. No.
Q. Okay. And when the officer took you in this room what did he ask or say to you?
A. He was just asking me different questions about a shooting that they was looking for somebody for.
Q. Okay. And did you tell them you knew anything about any shooting?
A. No.
Q. No, you didn't tell them, or no, you didn't know?
A. I don't know.
Q. You didn't know anything about a shooting?
A. No.
Q. You didn't know anything about anybody making, firing any shots at all?
A. I knew something about the shooting. I don't know -- they kept asking me like who did the shooting, who did the shooting, the sooner you tell me the sooner you leave. It was really Fischer who kept coming in and coming out. I told my statement.
Q. Hold on. My question was did you know anything about any shots being fired at all?
A. No.
Q. You didn't know anything about any shots being fired?





A. No.
Q. Okay, so this other detective was asking you questions in the room, correct?
A. Yes.
Q. Fischer was not asking you the questions?
A. Yes.
Q. But he kept coming in and out of the room?
A. Yes.
Q. Was he saying anything to you when he was coming in and out of the room?
A. No.
Q. Was he doing anything to you?
A. They was talking to me but they just kept telling me you look too young to be going to jail, you're about to go to jail for the rest of your life. I know you don't want to go to jail for the rest of your life. You too skinny to go to jail, they'll be raping you in jail.
Q. Okay. And were you saying anything to them?
A. No, not really. I asked for my father, like can I get a attorney, can my father be present with me. No, you're an adult now.
Q. You asked for your father and they told you no?
A. Yes.
Q. They said you're an adult?





A. Yes.
Q. You asked for an attorney?
A. Yes.
Q. Who did you ask that from?
A. Fischer. Detective Fischer.
Q. Where did you ask that from?
A. The same room.
Q. And what was his response?
A. He told me no.
Q. Okay. How long do you believe that you were in that room being asked questions?
A. I really can't tell you how long. I estimate about an hour.
Q. Okay.
A. It might have been longer. It was around an hour, hour and a half.
Q. It was around an hour, hour and a half. Okay. And all the while it was this other detective asking you questions?
A. Yes.
Q. Okay. And were you ever physically assaulted in that room?
A. No.
Q. Were you ever physically harmed in any way during this event, during the event at the precinct at

all?
A. No.
Q. Anyone ever kick you, beat you, punch you, slap you, strike you in any way?
A. No.
Q. Did anyone threaten you in any way at the precinct?
A. Fischer told me -- well, not right then. After I took my statement I went back in the holding cell. He got me -- it was dark outside, then he brought me back out the holding cell, that's when the other detective wasn't there. After I wrote the statement Fischer brought me back out, he kept telling me I think you know more, the sooner you tell me the sooner you leave.
Q. Okay.
A. He told me if you don't tell me who did the shooting I'm going to put all these charges on you. I said oh, no, you can't do that. He looked at me, you don't think I can? Watch me.
Q. Okay. You said it was dark outside. What does that have to do with anything?
A. It was around the time because the sun went down. It was around seven when I got in there but when he pulled me out the cell it was dark outside.
Q. Again, you used the word "pulled," so I just want





to be sure. He wasn't dragging you out the cell?
A. No.
Q. Okay. All right. And so you said you gave a statement?
A. Yes.
Q. Correct?
A. Yes.
Q. And the statement that you gave, where was it given?
A. In the interrogation room.
Q. All right. That was the verbal --
A. The same room I gave the first.
Q. That was the verbal statement, they asked you questions or excuse me, this other detective --
A. No, the detective wrote it down. I'm talking to him, I'm giving the statement and he wrote it down.
Q. Okay. All right. I'm going to show you what's been marked as Deposition Exhibit 2. We marked it in your mother's deposition but the first time we've used it is here. It's marked as Exhibit No. 2.
I'm going to ask you to take a look at that, please, both pages. Have you had an opportunity to look at it?
A. Yes.





Q. The exhibit that's marked as No. 2, that is two pages; is that correct?
A. Yes.
Q. All right. On there at the bottom of the first page you see an X and a signature; is that correct?
A. Yes.
Q. Whose signature is that?
A. Mine.
Q. That's your signature?
A. Yes.
Q. Looking at the second page at the top of the page it's page two of two; is that correct?
A. Yes.
Q. There is an X and a signature about almost three-quarters of the way down the page. Do you see that?
A. Yes.
Q. Is that a signature?
A. Yes.
Q. Whose is it?
A. Mine.
Q. Do you recognize that as your signature?
A. Yes.
Q. You testified about giving a statement, a written statement where the officers wrote down questions





as you were being questioned; is that correct?
A. This wasn't Fischer, this was the other guy.
Q. In the room; is that correct?
A. Yes.
Q. Is this the statement?
A. Yes.
Q. Okay. Did you sign another statement?
A. No.
Q. Okay. So did Fischer give you --
A. Fischer brought me back. He kept trying to get me to write another statement but I refused to write another statement.
Q. But you didn't write another statement?
A. No.
Q. So there is no other document that you signed?
A. No.
Q. I'm sorry, that's a statement, correct?
A. Yes.
Q. All right. On the date it says 8-26-07. Do you see that?
A. Yes.
Q. Okay. Do you recognize that to be the date that you were at the precinct?
A. Yes.
Q. The time says 9:05. Do you have any reason to