UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAHEEM AKBAR,
ARTHUR WARD, and
GWENDOLYN WARD,

        Plaintiffs,

                              CASE NO. 08-11268
v.                                  HON. LAWRENCE P. ZATKOFF

CITY OF DETROIT,
JAMES FISHER,
CORY KARSSEN, and
JOHN DOE(S),

        Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on May 4, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter comes before the Court on Defendants' motion for summary judgment [dkt 36]. Plaintiffs have responded, and the time period within which Defendants may reply has lapsed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## II.  BACKGROUND

On July 5, 2007, Plaintiff Raheem Akbar ("Mr. Akbar") and his brother, Rashad Akbar ("Rashad"), were socializing with friends at the intersection of Flanders and Gunston streets in Detroit, Michigan.  Shortly after they arrived, Mr. Akbar heard gun shots fired.  Mr. Akbar, along with others in the crowd, ran away from the shots and did not see the shooter.  There were no fatalities, but two individuals were harmed in the shooting.

The Detroit Police Department investigated the shooting and, after securing a statement from an eye witness, Defendant Fisher ("Mr. Fisher") came to believe that the shooting culminated from a dispute involving Mr. Akbar, Rashad, one of their relatives named Roderick Bridges ("Mr. Bridges"), and a group of neighborhood teenagers.  At that time, Defendants believed that Rashad was responsible for the shooting.  Mr. Fisher was assigned to the matter and charged with the task of securing Rashad.

Defendants sought information about Mr. Akbar and Rashad from their father, Plaintiff Arthur Ward ("Mr. Ward").  Defendants were parked near Plaintiffs' residence when Mr. Ward and an acquaintance named Skip were walking down the street to a nearby store.  Mr. Fisher and two other detectives called the men over to their car, prompting Skip to flee.  Mr. Ward did not flee but rather complied with Defendants' request and walked toward their vehicle.  Defendants ultimately apprehended Skip and ordered both men on the ground and handcuffed them while they ascertained the identities of the men.  After speaking with Mr. Ward's wife, Plaintiff Gwendolyn Ward ("Mrs. Ward"), Defendants removed the handcuffs from Mr. Ward and Skip and informed the Wards that their sons were involved in a shooting.

The following day, Plaintiffs appeared voluntarily at the City of Detroit Police Station to

cooperate with Defendants and to allow themselves to be questioned. Plaintiffs provided Defendants with Rashad's last known address at that time. Defendants allegedly separated Plaintiffs, isolated Mr. Akbar, and refused his requests for his parents and an attorney.

Defendants returned to Plaintiffs' residence on numerous occasions to inquire whether Rashad had returned home or whether Plaintiffs knew where Rashad was located. These visits occurred at all hours of the day and night, including while Plaintiffs and their family were sleeping. On one occasion, Defendant Karssens ("Mr. Karssens") allegedly told Plaintiffs that he would "call the State Police and the gang squad" and suggested that those entities would tear Plaintiffs' house apart. A short time later, the State Police visited Plaintiffs and searched their residence while ordering Plaintiffs to "lay down on the front lawn."

On August 27, 2007, Mr. Fisher filled out a warrant request for Rashad, Mr. Bridges, and Mr. Akbar. The warrant request stated that Mr. Bridges had been having problems with local teenagers and called Mr. Akbar and Rashad to "bring their guns to handle the problem." The request named Rashad as the shooter. Later that day, Defendants arrested Mr. Akbar on five criminal charges despite allegedly acknowledging that Mr. Bridges was the perpetrator of the shooting.[1] Defendants detained Mr. Akbar for two days, allegedly deprived him of "physical and mental necessities," and initiated proceedings based on supposedly fabricated information, resulting in two counts of felonious assault, two counts of assault with intent to do bodily harm, and one felony firearm count. On August 29, 2007, Mr. Akbar was arraigned in the 36th District Court on the original five charges plus several additional criminal charges. Mr. Akbar's attorney, Robert Harris,

---

[1] Mr. Bridges later entered into a plea agreement, but the terms of that plea have not been provided to the Court.

waived his right to a preliminary exam, and Mr. Akbar was thus placed into custody. Throughout all of these occurrences, Defendants apparently admitted repeatedly that they knew Mr. Akbar was innocent. According to Plaintiffs, Mr. Karssens indicated to the Wards that he would release their son from incarceration in exchange for information concerning Rashad.

Plaintiffs allege that Mr. Fisher, on several occasions, attempted to coerce witnesses to testify falsely against Mr. Akbar. Meanwhile, Plaintiffs, dissatisfied with the services of Robert Harris, dismissed him as Mr. Akbar's counsel and employed the services of new counsel, David Cripps, who promptly requested that Mr. Akbar's case be remanded for a preliminary exam. Very shortly thereafter, on January 4, 2008, Judge Brian Sullivan dismissed the charges against Mr. Akbar pursuant to the request of the prosecutor's office. Mr. Akbar had been incarcerated for a period of time in excess of four months. Plaintiffs filed a grievance against Robert Harris and filed this action. Rashad remains at large.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the

4

nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

On April 4, 2008, the Court remanded the state claims in this matter to the Wayne County Circuit Court. The following claims are now before the Court, numbered as they appear in Plaintiffs' complaint: 2) unlawful search and seizure; 3) violation of the Eighth Amendment, cruel and unusual punishment; 6) violation of civil rights, excessive force; 11) violation of civil rights, false imprisonment; 12) violation of civil rights: false imprisonment, unlawful arrest and detention; and 14) abuse of process. In their response to Defendants' motion, Plaintiffs note that they "withdraw their claim of Cruel and Unusual Punishment and their 42 U.S.C. § 1983 claims against the City of Detroit." Therefore, the Court dismisses Count 3 (violation of the Eighth Amendment, cruel and unusual punishment) of Plaintiffs' complaint in its entirety and dismisses all § 1983 claims against Defendant City of Detroit.

As the individual defendants in this matter are members of the Detroit Police Department, Plaintiffs' remaining claims must be analyzed under the qualified-immunity doctrine, which holds that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court conducts a qualified-immunity analysis in two parts. First, the Court examines whether a constitutional violation has occurred. If the Court finds such a violation,

it must consider whether the violation implicates "clearly established constitutional rights of which a reasonable person would have known." *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996) (quoting *Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995)).  In order for a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

### A.   UNLAWFUL SEARCH AND SEIZURE

Plaintiffs contend that Defendants entered their home without a warrant or probable cause under the pretext of looking for Rashad and that Mr. Karssens directed the Michigan State Police to do the same.  Plaintiffs argue that Defendants' ulterior motive was to harass the family until they provided some information beneficial to Defendants' investigation.  Defendants deny Plaintiffs' characterizations, contending instead that they were permitted entry into Plaintiffs' home.

The Fourth Amendment provides citizens the right to security in their homes against unreasonable searches and seizures without probable cause. *Minnesota v. Wayne*, 525 U.S. 83 (1998).  This right hinges on an individual's reasonable expectation of privacy. *Id.*  Protection extends not to the physical structure but to the individuals inside it. *Katz v. United States*, 389 U.S. 347, 351 (1967).  The Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. 573, 576 (1980) (citations omitted).  Therefore, when the police enter a particular premises to effect an arrest, they must have "probable cause to believe that the named suspect is present within at the time." *Fisher v. Volz*, 496 F.2d 333, 338 (3d Cir. 1974).

The papers before the Court establish that Defendants never obtained warrants for entry into

Plaintiffs' home. The materials before the Court also establish that the Wards gave Defendants permission to enter their home on several occasions. Yet Plaintiffs argue that Defendants did not have permission each time they entered their home. Plaintiffs treat the issue sparingly in their brief. Their entire argument on this point is as follows:

> The Defendants' [sic] entered the Plaintiffs' home without a warrant and on a separate occasion directed the State of Michigan Police to enter the home of the Plaintiffs' [sic] with a pretext of looking for the shooter, Rashad Akbar; all with the ulterior motive of harassing the family into providing information to assist in the Defendants' investigation. At no time, of the numerous appearances at the Plaintiffs' residence, did the Defendant have probable cause to enter their home, nor did the Defendants' [sic] produce the slightest information that Rashad Akbar was present at the Plaintiffs' residence.

Defendants acknowledge that the Michigan State Police raided Plaintiffs' home but argue that Plaintiffs have no evidence that Mr. Karssens instructed the Michigan State Police to search their home. Plaintiffs do allege elsewhere, however, that Mr. Karssens told them he would have the Michigan State Police search their home, and such a search did, in fact, occur. Accordingly, the Court finds that summary judgment is inappropriate at this time and therefore, Defendants' motion is DENIED with respect to Count 2.

      **B.**     **VIOLATION OF CIVIL RIGHTS: EXCESSIVE FORCE**

Defendants represent that the parties have stipulated that no cause of action for excessive force lies with the Wards. In their brief, however, Plaintiffs contend that Defendants used excessive force in their treatment of Mr. Ward by detaining him for over an hour while forcing him "to lay handcuffed on the concrete, when a less severe method was available to the Defendants to inquire into the whereabouts of Rashad Akbar." Therefore, the Court assumes that Defendants' representation is inaccurate and that Plaintiffs allege a claim of excessive force on behalf of Mr.

Ward. Plaintiffs argue further that the incarceration of Mr. Akbar constituted excessive force. Defendants deny that the actions about which Plaintiffs complain rise to the level of excessive force. Defendants also contend that probable cause existed for Mr. Akbar's detention.

The Fourth Amendment protects individuals from excessive force by law-enforcement personnel. *Watkins v. City of Southfield*, 221 F.3d 882, 887 (6th Cir. 2000). The Court reviews claims of excessive force under a standard of reasonableness. *Saucier v. Katz*, 533 U.S. 194, 209 (2001). The Court accordingly views the use of force from the perspective of a reasonable law-enforcement officer on the scene. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The analysis is to be conducted under the totality of the circumstances and without regard to intentions or motivations. *Id.* The inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. When resolving issues of excessive force, the Court must "carefully balance the nature of the intrusion on the [individual's] Fourth Amendment rights against 'the countervailing governmental interests at stake.'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Actual physical contact is not a requirement of an excessive-force claim. *See Burchett v. Kiefer*, 310 F.3d 937, 946 (6th Cir. 2002) (holding that claims of excessive force "can consist of the physical structure and conditions of the place of detention"). Whether law-enforcement officials employed the least forceful alternative is not determinative in excessive-force claims. *See, e.g.*, *Harrell v. Purcell*, 236 F. Supp. 2d 526, 532 (M.D.N.C. 2002).

    *1.    Arthur Ward*

Mr. Ward was walking to a nearby store with an acquaintance, Skip, when Mr. Fisher and two other detectives called to the men, asking them to come over to him. At that point, Skip fled while Mr. Ward complied with Defendants' request. Defendants eventually caught Skip, and Mr. Fisher ordered both men to the ground, and they complied. Mr. Fisher then handcuffed Mr. Ward and asked whether the acquaintance was his son. Because Mr. Fisher and the other officers at the scene were concerned that Skip disposed of some contraband while in flight, the officers searched the area while Mr. Ward and Skip were on the ground in handcuffs. After investigating the area and interviewing Mrs. Ward, Mr. Fisher removed the handcuffs from both men and told them that they were free to leave. Mr. Ward concedes that he was not physically touched in an inappropriate manner. It is uncertain precisely how long Mr. Ward was detained, but it did not exceed one hour.

In some circumstances, handcuffing may give rise to a claim for excessive force. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 640–41 (6th Cir. 2001) (excessive-force claim legitimate where handcuffs administered in overly tight fashion); *Martin v. Heideman*, 106 F.3d 1308, 1312–13 (6th Cir. 1997) (same). That said, in cases where "there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment." *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001). In this instance, Defendants did not handcuff Mr. Ward incident to arrest; however, Defendants believed that Mr. Ward's sons were involved in a violent crime. When Defendants noticed Mr. Ward walking with an unknown acquaintance, Defendants believed that the acquaintance could have been one of the sons. That belief was bolstered when Skip fled. Further, Skip's flight gave rise to suspicion that he intended to dispose of contraband. Under the totality of the circumstances, Defendants acted reasonably in temporarily detaining Mr. Ward while searching

9

the premises and ascertaining the identity of his acquaintance. Accordingly, the Court dismisses Mr. Ward's claim of excessive force against Defendants.

*2.     Raheem Akbar*

Plaintiffs argue that the incarceration of Mr. Akbar for four months constituted excessive force. Mr. Akbar concedes that he was never inappropriately touched. In support of Plaintiffs' claim of excessive force with respect to Mr. Akbar, Plaintiffs cite to *Burchett*, 310 F.3d 937, for the proposition that "physical contact is not a prerequisite to a colorable claim for excessive force." Plaintiffs also cite to *Cornwell v. Dahlberg*, 963 F.2d 912 (6th Cir. 1992), for the proposition that "claims of excessive force do not necessarily require allegations of assault, but rather can consist of the physical structure and conditions of the place of detention." Neither of these cases involve fact patterns related to the present matter, and the generalized propositions for which the cases stand do not advance Mr. Akbar's argument. Mr. Akbar alleges no inappropriate physical contact nor does he call into question the conditions of his detention. Rather, he claims that he was detained for four months without probable cause. In the absence of a showing to the contrary, the Court is hesitant to expand the scope of excessive-force claims to include incarceration when there is no physical harm, there is no allegation of substandard conditions, and when such claims are adequately and appropriately addressed under false arrest and unlawful detention analyses, which are discussed below. Accordingly, the Court dismisses Count 6 in its entirety.

### C.     VIOLATION OF CIVIL RIGHTS: FALSE IMPRISONMENT AND UNLAWFUL ARREST AND DETENTION

Plaintiffs contend that Mr. Fisher lacked probable cause to arrest and incarcerate Mr. Akbar for four months. Plaintiffs take the position that Defendants consistently expressed awareness that Mr. Akbar was innocent and would be released as soon as Plaintiffs provided information regarding

Rashad. Plaintiffs note that all charges against Mr. Akbar were dropped. Defendants do not develop an independent position on the issue of false imprisonment but instead "rely upon the same argument addressed under the excessive rights [sic] analysis." Defendants also contend that Mr. Akbar is "collaterally estopped from re-litigating the issue of probable cause for his arrest and detention" because Mr. Akbar's attorney waived the preliminary exam.

In Michigan, criminal defendants are entitled to a preliminary examination, the purpose of which is "to determine if a crime has been committed and, if so, if there is probable cause to believe the defendant committed it." *People v. Hammond*, 411 N.W.2d 837, 838 (Mich. Ct. App. 1987) (citing Mich. Comp. Laws § 766.13). Defendants argue that Mr. Akbar's attorney "waived the issue [of probable cause] at the preliminary examination" and therefore, he cannot raise it now. Defendants cite to a number of cases in which the plaintiffs had actually contested probable cause at preliminary examinations and were later barred from contesting it in § 1983 suits. The record before the Court establishes, however, that contrary to Defendants' assertions, no preliminary examination was held. In the transcript of the motion to dismiss the charges against Mr. Akbar, the prosecutor explicitly mentioned "waiver of the exam." The prosecutor further noted that Mr. Akbar's subsequent attorney, "Mr. Cripps[,] asked that this case be remanded for an exam." Judge Sullivan explicitly asked whether the preliminary exam had been held; both the prosecutor and Mr. Cripps responded that it was not held. Under the circumstances, the elements of collateral estoppel cannot apply because there was no valid, final judgment, the issue was not actually litigated, and Mr. Akbar had no opportunity to litigate the issue because his attorney waived the examination. *See, e.g.*, *Darrah v. Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001). In a similar situation, the Sixth Circuit held that waiver of a preliminary examination does not preclude a plaintiff from litigating the

probable-cause issue in a subsequent § 1983 suit. *Diamond v. Howd*, 288 F.3d 932 (6th Cir. 2002). Defendants' collateral-estoppel argument is without merit, and Mr. Akbar has not waived his right to challenge whether probable cause existed for his arrest and detention.

For Mr. Akbar to succeed on his claims, he must prove that the arresting officer lacked probable cause to arrest him. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999)). An arrest pursuant to a facially valid warrant is generally a complete defense to a federal claim for false arrest or false imprisonment. *Baker v. McCollan*, 443 U.S. 137, 143–44 (1979). This Court is concerned solely with the question of whether Mr. Akbar's detention was unconstitutional. A public official is liable under § 1983 "if he causes the plaintiff to be subjected to deprivation of his constitutional rights." *McCollan v. Tate*, 575 F.2d 509, 512 (5th Cir. 1978) *reversed on other grounds by* 443 U.S. 137 (1979). The Court presumes that the constitutional right of which Mr. Akbar was allegedly deprived is "the Fourteenth Amendment's protection against deprivations of liberty without due process of law." *Baker*, 443 U.S. at 142. It should be noted that "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Id.* at 145.

Defendants possessed a facially valid warrant for the arrest of Mr. Akbar. Plaintiffs effectively concede this, attaching to their brief a warrant application filled out by Mr. Fisher and declaring that "Officer Fisher with bad faith issued a warrant against [Mr. Akbar]." This understanding is reinforced by Defendants who state that "the warrant request was submitted to an Assistant Wayne County Prosecutor, who issued warrants against [Mr. Akbar], his brother and a third participant." In a separate section of their brief, however, Plaintiffs aver, "Defendant Fisher

12

did not have a warrant, much less probable cause to support the detention and incarceration of [Mr. Akbar]." The Court finds that this statement was made in error because the record as a whole establishes that a warrant was issued for Mr. Akbar, Rashad, and Mr. Bridges. The warrant request contains the following references to Mr. Akbar, based on discussions with several eye witnesses:

> [Mr. Bridges] then phoned [Rashad and Mr. Akbar] to come over and bring their guns to handle the problem. [Rashad and Mr. Akbar] arrived over to [sic] the location and began to argue with witness #1. . . . Later as [Rashad and Mr. Akbar] began to leave the location [Rashad] leaned out of the vehicle they were in and fired numerous shots towards the address of 11762 Flanders . . . .

Mr. Fisher points out that he does not determine what charges are brought against particular defendants nor does he recommend what charges should be brought against them. Mr. Fisher merely filled out the warrant request pursuant to discussions with multiple witnesses, and the county prosecutor determined which charges to bring against each of the three defendants. Mr. Fisher did not represent that Mr. Akbar was the shooter. Regardless, Plaintiffs argue without specificity that Mr. Fisher filled out the warrant request "with bad faith" and that he "did supply false information to assist in the multiple felony charges brought against Mr. Akbar."

Mr. Akbar was arrested pursuant to a facially valid warrant, and Plaintiffs make no argument that the arrest was constitutionally deficient except for vague references to "false information." It is lamentable that Mr. Akbar was incarcerated for four months before being released, but the materials submitted to the Court do not suggest that the length of his incarceration is attributable in any way to the improper conduct of Defendants. On the contrary, the circumstances suggest that Mr. Akbar's first attorney waived the preliminary examination and subsequently requested several continuances. Almost immediately upon substituting counsel, Mr. Akbar was released without interference from Defendants. The circumstances of this case, although bizarre in their own right,

13

do not establish that Mr. Akbar's incarceration was unconstitutional. Accordingly, the Court dismisses Counts 11–12 in their entireties.

### D. ABUSE OF PROCESS

Defendants argue that, because it is not clear whether an abuse-of-process claim may be redressed under § 1983 in the Sixth Circuit, it cannot be said that "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Russo*, 953 F.2d at 1042 (quoting *Creighton*, 483 U.S. at 639). As such, Defendants argue that they could not have "known that Plaintiff Akbar had a clearly established right to be free from an abuse of process under the facts of this case." Plaintiffs respond that "the threat of prosecution to extort information from the family was an abuse of process." Plaintiffs also contend that Mr. Fisher coerced "witnesses to testify falsely against . . . Mr. Akbar to continue his incarceration and increase pressure upon the Plaintiffs to provide information concerning Rashad Akbar."

The Sixth Circuit has not determined whether an abuse-of-process claim is a cognizable claim that may be redressed under § 1983. *See, e.g.*, *Voyticky v. Timberlake*, 412 F.3d 669, 676–77 (6th Cir. 2005). If such a claim were a cognizable federal constitutional claim, it would likely track the elements of the state claim. Under Michigan law, an abuse-of-process claim requires a plaintiff to establish 1) an ulterior purpose and 2) an act that is improper in the regular prosecution of the case. *Peiser v. Detroit Free Press*, 242 N.W.2d 775 (Mich. Ct. App. 1976). Simply instituting legal proceedings, even if for improper purposes, is insufficient to create an abuse-of-process claim. *Friedman v. Dozorc*, 312 N.W.2d 585 (Mich. 1981).

Bearing in mind that the mere institution of legal proceedings is insufficient to state a claim for abuse of process, the only improper acts Plaintiffs allege are the use of fear tactics and the

coercion of witnesses to testify falsely against Mr. Akbar. Mr. Akbar, however, waived his preliminary examination and, therefore, no witness testified against him at all. Further, Plaintiffs set forth no law to support their contention that Defendants' alleged "fear tactics" amounted to an improper act in the regular prosecution of the case. Notwithstanding those shortcomings in Plaintiffs' claim, the Court finds Defendants' argument that they are entitled to qualified immunity unless their conduct violated some clearly established constitutional right persuasive. Because the Sixth Circuit has not determined whether abuse-of-process claims may be redressed under § 1983, Defendants are immune from liability.

## V.  CONCLUSION

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is GRANTED with respect to Counts 3, 6, 11, 12, and 14.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment is DENIED with respect to Count 2.

IT IS SO ORDERED.

Date: May 4, 2009

S/Lawrence P. Zatkoff
HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE